FORM B104 (08/07)                                                                                    2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

**PLAINTIFFS**
Sunnylane Partners, LLC

**ORIGINAL**

**DEFENDANTS**
Ezri Namvar

**RECEIVED**
**JAN 29 2009**
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

**ATTORNEYS** (Firm Name, Address, and Telephone No.)
David R. Gabor, State Bar No. 145729, Russ, August & Kabat
12424 Wilshire Boulevard, 12th Floor, Los Angeles, California
90025 Telephone: 310.826.7474

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
- ☐ Debtor
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Creditor
- ☒ Other  Theft Victim
- ☐ Trustee

**PARTY** (Check One Box Only)
- ☒ Debtor
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Creditor
- ☐ Other
- ☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
1. Fraud, 2. Conversion, 3. Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty, 4. Breach of Contract, 5. Breach of Covenant of Good Faith and Fair Dealing, 6. Unlawful Business Practices, 7. Unjust Enrichment, 8. Constructive Trust, 9. Accounting, 10. Declaratory Relief and Injunction

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**

11-Recovery of money/property - §542 turnover of property

12-Recovery of money/property - §547 preference

___ 13-Recovery of money/property - §548 fraudulent transfer

| 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**

___ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**

31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**

41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**

66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
1 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
2 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**

___ 61-Dischargeability - §523(a)(5), domestic support
| 68-Dischargeability - §523(a)(6), willful and malicious injury
63-Dischargeability - §523(a)(8), student loan
64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
3 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
4 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
| 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
___ 01-Determination of removed claim or cause

**Other**
SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
5 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☒ Check if a jury trial is demanded in complaint | Demand $ excess of $2Mil |

Other Relief Sought    1. Discharge - Plaintiff's money was stolen from a 26 U.S.C. Section 1031 Exchange Account and is not property of the Bankruptcy Estate 2. Injunction/Stay/Constructive Trust/Accounting

FORM B104 (08/07), page 2                                                2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| **NAME OF DEBTOR**<br>Ezri Namvar | **BANKRUPTCY CASE NO.**<br>LA 0832349 ER | |
| **DISTRICT IN WHICH CASE IS PENDING**<br>Central | **DIVISIONAL OFFICE**<br>Los Angeles | **NAME OF JUDGE**<br>Judge Barry Russell |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| **PLAINTIFF**<br>n/a | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)** | | |
| **DATE**<br>January 29, 2009 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)**<br>David R. Gabor | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| David R. Gabor, State Bar No. 145729<br>Russ, August & Kabat<br>12424 Wilshire Boulevard, 12th Floor<br>Los Angeles, California 90025<br>Telephone:   310.826.7474<br>Facsimile:    310.826.6991<br>Email:    dgabor@raklaw.com  **ORIGINAL** | |

*Attorney for Plaintiff* Sunnylane Partners, LLC

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| In re:<br><br>Ezri Namvar | RECEIVED<br>JAN 2 9 2009<br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY_____ Deputy Clerk | | CHAPTER   11 |
|---|---|---|---|
| | | | CASE NUMBER  LA 0832349 ER |
| | | Debtor. | ADVERSARY NUMBER |
| Sunnylane Partners, LLC | | Plaintiff(s), | *(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)* |
| Ezri Namvar | vs. | Defendant(s). | **SUMMONS AND NOTICE OF STATUS CONFERENCE** |

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint.  You must also send a copy of your written response to the party shown in the upper left-hand corner of this page.  Unless you have filed in duplicate and served a responsive pleading by _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| Hearing Date: | Time: | Courtroom: | Floor: |
|---|---|---|---|
| ❏  **255 East Temple Street, Los Angeles** | | ❏  **411 West Fourth Street, Santa Ana** | |
| ❏  **21041 Burbank Boulevard, Woodland Hills** | | ❏  **1415 State Street, Santa Barbara** | |
| ❏  **3420 Twelfth Street, Riverside** | | | |

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference.  Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval.  The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____

**JON D. CERETTO**
**Clerk of the Bankruptcy Court**

By: _____
*Deputy Clerk*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*Revised December 1998 (COA-SA)*

**F 7004-1**

**ORIGINAL**

1 | **RUSS, AUGUST & KABAT**
DAVID R. GABOR, State Bar No. 145729
2 | 12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
3 | Telephone:    310.826.7474
Facsimile:    310.826.6991
4 | Email:    dgabor@raklaw.com

5 | Attorneys for Plaintiff
Sunnylane Partners, LLC



FILED

JAN 29 2009

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

SUNNYLANE PARTNERS, LLC, an
Oklahoma limited liability company,

        Plaintiff,

    vs.

EZRI NAMVAR, an individual,

        Defendant.

Chapter 11
Bankruptcy No. LA 08-32349 ER
Adv. Action No.

**COMPLAINT FOR:**

1.   **FRAUD**

2.   **CONVERSION**

3.   **BREACH OF FIDUCIARY DUTY
AND AIDING AND ABETTING
BREACH OF FIDUCIARY DUTY**

4.   **BREACH OF CONTRACT**

5.   **BREACH OF COVENANT OF
GOOD FAITH AND FAIR
DEALING**

6.   **UNLAWFUL BUSINESS
PRACTICES**

7.   **UNJUST ENRICHMENT**

8.   **CONSTRUCTIVE TRUST**

9.   **ACCOUNTING**

10.  **DECLARATORY RELIEF AND
INJUNCTION**

[Demand for Jury Trial]

2822-03 090128 BankrComplaintv2

**COMPLAINT**

**I.**

## PRELIMINARY STATEMENT

1.      Sunnylane Partners, LLC ("Sunnylane" or "Plaintiff") owned certain real property in Oklahoma City, Oklahoma.  On August 19, 2008, Plaintiff entered into an Exchange Agreement with defendant Namco Financial Exchange Corporation ("Namco Exchange"), an entity owned or controlled by defendant Ezri Namvar.  In that Exchange Agreement, Namco Exchange agreed to act as a qualified intermediary on behalf of Plaintiff pursuant to United States Internal Revenue Code section 1031 (26 U.S.C. § 1031) (hereinafter, "Section 1031") tax deferred exchange of real property.

2.      On August 20, 2008, Plaintiff sold its real property in Oklahoma and had the net proceeds of that sale, approximately $2 million, deposited with Namco Exchange pursuant to the Exchange Agreement.

3.      Namco Exchange initially placed the funds in Security Pacific National Bank, a bank in which Ezri Namvar was, on information and belief, either a director or officer.  Plaintiff, however, requested that all of its Section 1031 exchange funds be transferred by wire to an account at Wells Fargo Bank.  Namco Exchange complied with the request and wire-transferred the funds in the amount of approximately $2 million to Wells Fargo Bank, Account No. 091900465 (the "Wells Fargo Account").

4.      On December 8, 2008, Plaintiff's representative contacted Namco Exchange to confirm the amount of funds that were in Plaintiff's Section 1031 exchange account in anticipation of completing Plaintiff's tax deferred exchange.  At that time, Plaintiff was advised by an email from Val Muraoka of Namco Exchange that it should speak with Namco Exchange's attorney.  Shortly thereafter, on or about December 10, 2008, Plaintiff learned that there was no money in the Wells Fargo Account.  The only persons with access to the Wells Fargo Account were persons affiliated with Namco Exchange, specifically Ezri Namvar.  Richard August and Larry Russ, investors in Sunnylane, made personal phone calls to inquire about the situation and learned that the Wells Fargo Account had been looted by Ezri Namvar, Namco Exchange or one

1    or more of Ezir Namvar's brothers as part of a joint scheme, and that the funds would not be

2    returned.

3        5.    On information and belief, Plaintiff had unwittingly become part of a series of

4    significant financial misappropriations, encompassing potentially hundreds of millions of dollars,

5    perpetrated by Ezri Namvar, various members of his family and Namco Exchange. As a result of

6    its role in these schemes, Plaintiff is informed and believes that Namco Exchange was at all

7    relevant times an inadequately capitalized sham corporation.

8        6.    On information and belief, through this criminal enterprise, by acting as a

9    purported Section 1031 "qualified intermediary," Ezri Namvar, alone or in conjunction with

10   others, stole all of Plaintiff's money. Indeed, as it has now transpired, despite contractually

11   agreeing to maintain Plaintiff's Section 1031 exchange proceeds in a "nationally insured bank or

12   savings institution" – in this case Wells Fargo Bank – defendant instead stole and

13   misappropriated Plaintiff's funds for his own risky investments or in furtherance of his family

14   conspiracy and financial misdeeds.

15   **II.**

16   **JURISDICTION AND VENUE**

17       7.    Plaintiff is informed and believes and based thereon alleges that on or about

18   December 19, 2008, an involuntary petition under 11 U.S.C. § 303 was filed against defendant

19   Ezri Namvar imposing an automatic stay in Bankruptcy Case No. LA 08-32349 ER, entitled *In*

20   *re Ezri Namvar*. Creditors for the involuntary bankruptcy include Iraj Farhadian.

21       8.    This Court has jurisdiction of this adversary proceeding and Complaint pursuant

22   to 28 U.S.C. Section 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. Section

23   157(b)(2).

24       9.    Venue for this Adversary Proceeding is proper in the Central District of

25   California, Los Angeles Division, because the underlying Chapter 11 case was filed in this

26   Central District, Los Angeles Division. Additionally, the managing member of Plaintiff, as well

27   as defendant Ezri Namvar, reside in the Central District, Los Angeles Division. Venue in this

28

RUSS, AUGUST & KABAT

1    Court is further proper because the matters at issue at least partially occurred in Los Angeles

2    County and the liability for the claims brought herein arose here as well.

3    **III.**

4    **THE PARTIES**

5         10.    Plaintiff Sunnylane Partners, LLC is, and at all relevant times was, an Oklahoma

6    limited liability company whose sole purpose was the purchase and ownership of the asset

7    known as 7201 S. Sunnylane Rd., Oklahoma City, Oklahoma.  Plaintiff Sunnylane's managing

8    member is, indirectly, a Beverly Hills, California domiciliary.

9         11.    Plaintiff is informed and believes, and based thereon alleges, that defendant Ezri

10    Namvar is an individual residing in Beverly Hills, CA and is, on information and belief, an

11    owner or principal and officer or director of defendant Namco Financial Exchange Corporation.

12         12.    Upon information and belief, defendant Ezri Namvar formed Namco Exchange

13    with the intention of avoiding personal liability for the financial scheme described herein.

14    Plaintiff is informed and, on that basis alleges, that Ezri Namvar used Namco Exchange as an

15    alter ego by, among other things:

16              a.    Commingling personal and corporate funds and other assets;

17              b.    Diverting corporate funds or assets to uses other than the benefit of the

18    corporation or the satisfaction of its obligations and debts;

19              c.    Treating Namco Exchange's corporate assets as his own;

20              d.    Failing to maintain separate and adequate corporate records;

21              e.    Failing to capitalize Namco Exchange adequately;

22              f.    Using Namco Exchange as a mere shell, instrumentality, or conduit for

23    personal business activities; and

24              g.    Using Namco Exchange as a shield against personal liability or as a

25    subterfuge for illegal transactions.

26         13.    Plaintiff is informed and believes, and based thereon alleges, that each of the

27    defendants was the agent, alter ego, servant, co-conspirator and/or representative of each of the

28    of the other remaining defendants and at all times herein relevant was acting within the

*RUSS, AUGUST & KABAT*

1   authorized scope and course of said agency, conspiracy and employment and all of said acts,

2   conduct or omissions were subsequently ratified by the respective principals and accepted by the

3   principals of the defendants.

4        14.    Plaintiff is informed and believes, and based thereon alleges, that each defendant

5   was the agent, employee, servant, partner or co-conspirator of each of the other defendants or is

6   in some other manner legally liable for the conduct and damages at issue in this action and was

7   acting within the course and scope of one or more of such relationships and with the direct or

8   implied knowledge, consent or ratification of each of the other defendants.

9                                   **IV.**

10                          **GENERAL ALLEGATIONS**

11  **A.    The Namvar Family Conspiracy**

12       15.    Plaintiff is informed and believes, and based thereon alleges, that Ezri Namvar

13  and other members of his family stand accused in numerous lawsuits of perpetrating a financial

14  fraud, that some call a "Ponzi scheme," primarily – but not exclusively – targeting the Los

15  Angeles Persian Jewish community. Through their financial manipulations, Ezri Namvar stands

16  accused of stealing or misappropriating hundreds of millions of dollars. Plaintiff is informed and

17  believes that it has been caught-up in this massive fraud.

18       16.    On information and belief, the scheme was masterminded by Ezri Namvar. Ezri

19  Namvar represented to potential investors that his investors could recover windfall profits by

20  allowing him (and his family) to invest their money. In this way, Ezri Namvar obtained millions

21  of dollars from unsophisticated investors while usually offering only unsecured promissory notes

22  in return.

23       17.    Pursuant to this plan, on information and belief, Ezri Namvar and his family

24  members created a web of Limited Liability Companies ("LLCs"), each of which owned

25  interests in separate parcels of real property or improved real estate. The members of these

26  LLCs were the Namvar family members, Namvar family trusts and other as-yet unidentified

27  third parties. In each instance, on information and belief, Ezri Namvar simply gave membership

28  interests in the LLCs to his family members, trusts and third parties for no consideration (or

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

1  inadequate consideration) that in no way corresponded to the "members'" capital investments (if

2  any) actually made in the LLCs.

3      18.    On information and belief, when the investment assets were sold, the proceeds

4  from the LLCs were not allocated back to the members of the corresponding LLCs.  Rather, in

5  an attempt to hide his crumbling financial scheme, these funds were instead placed into a pool of

6  funds – possibly at the Namvar family owned and operated Security Pacific Bank – and were

7  used to cover immediate debts of Ezri Namvar and his various Namvar-controlled entities or to

8  pay off investors who were seeking to withdraw funds.  Other times, on information and belief,

9  the money would be shipped offshore.

10     19.    To accomplish this fraudulent financial scheme, Ezri Namvar, on information and

11  belief, "seeded" his brothers as Directors of Security Pacific Bank or other Namvar-controlled

12  boards of directors to be a rubber-stamp for his illicit activities, and otherwise made sure they

13  were richly remunerated.

14     20.    On information and belief, in or about November 2008, the Federal Deposit

15  Insurance Corporation closed Security Pacific Bank as a result of financial improprieties by the

16  Namvars, including failures to comply with banking regulations and a shortfall in capital caused

17  by the various misappropriations by the Namvars.

18     21.    On information and belief, by the second half of 2008, Security Pacific Bank,

19  Namco Exchange, and the rest of the daisy chain of Namvar-controlled assets were in extreme

20  financial trouble due to the downturn in the real estate market and the increased demands from

21  Namvar clients to pull their money out of Namvar investments.  On information and belief, Ezri

22  Namvar and his brothers, via their family controlled LLCs, started selling off assets to prop-up

23  Security Pacific Bank and their other real estate investments.

24     22.    On information and belief, because the money received from the sale of assets

25  was insufficient to pay all of the mounting demands from investors, the Namvars began to

26  outright misappropriate or steal funds that had been deposited in Namco Exchange in furtherance

27  of their attempted cover-up.  In this way, the assets that Plaintiffs placed into Namco Exchange

28  were illegally misappropriated or stolen from Wells Fargo Bank, where they had been

1    transferred, and, on information and belief, were subsequently distributed to the defendant or to

2    other Namvar family members to either retain or shift into other Namvar family-controlled

3    entities, whether in the United States, Israel or elsewhere.

4        23.    As a result, Plaintiff is informed and believes, and based thereon alleges, that Ezri

5    Namvar, alone, or through Namvar family members, is presently holding assets that rightfully

6    belong to Plaintiff. Those assets, whether held directly by Ezri Namvar or indirectly in LLCs or

7    other entities, should now immediately be placed into a constructive trust and be made subject to

8    an accounting so that Plaintiff can trace its misappropriated or stolen proceeds and recover them.

9    **B.    Tax Deferred Exchanges Generally**

10       24.    In a typical real property sale, the selling party is taxed on any gain realized from

11   the sale of that property. In a Section 1031 exchange, however, the tax on any gain is deferred

12   until some future date.

13       25.    A tax deferred exchange is a method by which a property owner (or "Exchanger")

14   exchanges properties of "like-kind" by reinvesting the proceeds of the sale of one property (the

15   "Relinquished Property") in another property (the "Replacement Property") of equal or greater

16   value within a 180-day period (the "Exchange Period"). In this manner, the exchanger realizes

17   no capital gain on the sale of the Relinquished Property, and defers the payment of certain taxes.

18       26.    In order to obtain the full tax benefit afforded by Section 1031, a deferred

19   exchange must be structured so that an Exchanger's interest in the Relinquished Property is

20   assigned to a "qualified intermediary," as that term is defined by United States Treasury

21   Regulation § 1031. 103 1(k)-i(g)(4)(iii) (hereinafter, "Qualified Intermediary"), prior to the close

22   of the sale of the Relinquished Property.

23       27.    A Qualified Intermediary is formally defined as an independent person who enters

24   into a written agreement (the "Exchange Agreement") with the Exchanger, and, as required by

25   the Exchange Agreement, acquires the Relinquished Property from the Exchanger, transfers the

26   Relinquished Property to its purchaser, acquires the Replacement Property with the proceeds of

27   the sale of the Relinquished Property, and transfers the Replacement Property to the Exchanger.

28

RUSS, AUGUST & KABAT

2822-03 090128 Bank:Complaintv2

7

**COMPLAINT**

For high cases

28.     In order to take advantage of a tax deferred exchange, the Exchanger's rights to receive, pledge, borrow or otherwise obtain the proceeds of the sale of the Relinquished Property is limited during the Exchange Period - *i.e.*, the Qualified Intermediary is to hold those proceeds in trust and to use them only to acquire the Replacement Properties.  As a consequence, in effect, a Qualified Intermediary acts as the Exchanger's independent escrow agent for, among other things, the exchange proceeds and acquisition of Replacement Properties during the Exchange Period.

**C.    Plaintiff's Use Of Namco Exchange As A "Qualified Intermediary"**

29.     On August 19, 2008, Plaintiff and Namco Exchange entered into the Exchange Agreement (the "Agreement"), a true and correct copy of which is attached as Exhibit "1" to this Complaint and is incorporated herein by this reference.

30.     By the terms of the Agreement, Namco Exchange agreed to act as a Qualified Intermediary for Plaintiff in connection with a deferred exchange of certain real property located at 7201 S. Sunnylane Road, Oklahoma City, Oklahoma (the "Oklahoma Relinquished Property") for Replacement Property(ies) to be identified by Plaintiff within the identification period defined in the Agreement (the "Identification Period").

31.     Indeed, Section 1.1 of the Agreement provides in pertinent part:

Exchanger [Plaintiff] agrees to convey the [Oklahoma] Relinquished Property to [Qualified] Intermediary in consideration of, and in exchange for the conveyance by [Qualified] Intermediary to Exchanger [Plaintiff] of other property (or properties) of like kind to be identified by Exchanger and conveyed to [Qualified] Intermediary pursuant to Section 2 below. Such other property (or properties) is referred to in this Agreement as the "Replacement Property." [Qualified] Intermediary agrees to convey the Relinquished Property to Buyer and to acquire the Replacement Property from the seller or sellers thereof (the

RUSS, AUGUST & KABAT

"Seller"), on the terms and conditions in this Agreement, in furtherance of the exchange described above.

**D.      Deposit Of Exchange Proceeds With Namco Exchange**

32.      In accordance with the Agreement, on or about August 20, 2008, the proceeds of the sale of the Oklahoma Relinquished Property, totaling no less than $1,999,471.96, were deposited into a Security Pacific Bank escrow account (the "Exchange Proceeds"). Under the Agreement, the parties specifically agreed that "any cash proceeds received from the conveyance of the [Oklahoma} Relinquished Property will be deposited with other funds in a general account or accounts of the Intermediary [Namco Exchange] with any nationally insured bank or savings institution, and may be transferred to any other such general account or accounts as directed by Intermediary [Namco Exchange]." Agreement, §5. Section 5 of the Agreement further entitled Plaintiff to the benefit of all interest earned from the deposited Exchange Proceeds. Nothing in the Agreement permitted defendant Namco Exchange or any other defendant, to make any other use of the Exchange Proceeds, including using the proceeds to fund other investments or projects, or at all.

**E.      Exchange Proceeds Are Transferred To A Wells Fargo Account And Are Subsequently Stolen**

33.      Subsequent to the deposit of the funds to Security Pacific Bank, Plaintiff directed that the funds be transferred to a larger institution. On or about August 29, 2008, Plaintiff did, in fact, receive confirmation from defendant Namco Exchange that the entire amount of $1,999,471.96 was transferred to Wells Fargo Bank account No. 091900465. A true and correct copy of the August 29, 2008, transfer documentation is attached as Exhibit "2" to this Complaint and is incorporated herein by this reference.

34.      On or about November 5, 2008, in accordance with the terms of the Agreement, Plaintiff authorized and directed Namco Exchange to transfer and release $27,498.72 of the Exchange Proceeds to Plaintiff to cover certain transaction costs. This release was accomplished by Wells Fargo Check No. 00371236 on November 5, 2008. A true and correct copy of the

RUSS, AUGUST & KABAT

1    November 5, 2008, transfer check in the amount of $27,498.72 is attached as <u>Exhibit "3"</u> to this

2    Complaint and is incorporated herein by this reference.

3        35.    Subsequent to the transfer, there was, or should have been not less than

4    $1,971,973.24 in the Wells Fargo Account.

5        36.    On December 8, 2008, Plaintiff's representative contacted Namco Exchange to

6    confirm the amount of funds that were in Plaintiff's Section 1031 exchange account in

7    anticipation of completing Plaintiff's tax deferred exchange.  At that time, Plaintiff was advised

8    by an email from Val Muraoka of Namco Exchange that it should speak with Namco Exchange's

9    attorney.

10       37.    On or about December 10, 2008, Richard August and Larry Russ, investors in

11   Sunnylane, learned that there was no money in the Wells Fargo Account.  Subsequently, Plaintiff

12   learned that its Namco Exchange Section 1031 account had been robbed of every last cent and

13   that the money would not be returned.  On information and belief, money could only be

14   transferred out of the Section 1031 or Wells Fargo Account by Ezri Namvar or Namco Exchange

15   employees or officers, and it is highly likely that the Exchange Proceeds were misappropriated or

16   stolen by Ezri Namvar, or caused to be misappropriated or stolen upon his instruction.

17       38.    By failing to maintain the Exchange Proceeds in a "nationally insured bank or

18   savings institution," and by illegally withdrawing, misappropriating, or stealing the Exchange

19   Proceeds from the Wells Fargo Account or the Section 1031 account, defendant Namvar, among

20   other things: (1) breached the Agreement; (2) misappropriated or stole Plaintiff's funds and

21   Exchange Proceeds for his own use; (3) breached the fiduciary duty they owed to Plaintiff; and

22   (4) engaged in an unfair, unlawful, or fraudulent business practice within the meaning of Cal.

23   Bus. & Prof. Code Sections 17200 *et seq.*  To date, despite Plaintiff's demands, defendant has

24   failed, refused or neglected to return the balance of the Exchange Proceeds to Plaintiff.

25                              **FIRST CAUSE OF ACTION**

26            **(Fraud And Intentional Deceit Against Ezri Namvar)**

27       39.    Plaintiff hereby incorporates by reference each and every allegation of paragraphs

28   1 through 38 as though fully set forth herein.

RUSS, AUGUST & KABAT

2822-03 090128 Bankr:Complaintv2

10

**COMPLAINT**

40.     Beginning in or about June 2008, defendant Ezri Namvar made the following misrepresentations and material omissions, among others, to Plaintiff:

Misrepresentations:

a.     Representing to Plaintiff, both expressly and through a continuous course of conduct, that Namco was a legitimate exchange company and Qualified Intermediary for purposes of completing Section 1031 exchange transactions, when, upon information and belief, Namco Exchange was nothing more than defendant's vehicle for converting the funds of others for personal investment purposes or to operate an illegal financial scheme;

b.     Representing to Plaintiff, both expressly and through a continuous course of conduct, that the Exchange Proceeds were being held in trust and in a "nationally insured bank or savings institution," when, upon information and belief, Plaintiff's funds were misappropriated or stolen presumably for use for other purposes including defendants' personal investments or the operation of an illegal financial scheme;

c.     Representing to Plaintiff, both expressly and through a continuous course of conduct, that the Exchange Proceeds were being held and used for legitimate business purposes consistent with the deferred exchange as contemplated by the Agreement, when, as alleged above, they were not;

d.     Representing to Plaintiff, both expressly and through a continuous course of conduct, that, following deposit, the Exchange Proceeds would be and were immediately available for the purchase of Replacement Property(Ies) identified by Plaintiff when, as alleged above, they were not;

e.     In response to Plaintiff's request that Namco Exchange identify the location of the Exchange Proceeds, Namco Exchange's representative misrepresented that the balance of the Exchange Proceeds were being held in the Well Fargo Account, when, upon information or belief, they were not and instead had been disposed of by defendant Ezri Namvar for his own personal investment or operation of an illegal financial scheme.

RUSS, AUGUST & KABAT

Material Omissions:

f.    At all pertinent times, defendant failed to disclose that Namco Exchange was not a legitimate exchange company and Qualified Intermediary, but, upon information and belief, was instead a sham corporation set up and used to generate capital for risky investments or the operation of an illegal financial scheme; and

g.    At all pertinent times, defendant failed to disclose that, rather than maintain the Exchange Proceeds in the manner dictated by the Agreement, upon information and belief, he had instead disposed of or misappropriated Plaintiff's Exchange Proceeds completely or in a manner that made such funds unlikely to be recovered and otherwise unavailable to Plaintiff to accomplish the purposes of the Section 1031 Exchange.

41.    Plaintiff is informed and believes, and based thereon alleges, that, at all times relevant herein, defendant knowingly and willfully conspired with as yet un-identified additional defendants, by cooperation, encouragement, ratification, or otherwise, to defraud Plaintiff, as set forth herein.

42.    Plaintiff is informed and believes, and on that basis alleges, that when defendant made these representations and material omissions, he knew them to be false, fraudulent or deceptive, and made them with the intention to deceive and defraud Plaintiff and to induce Plaintiff to act in reliance thereon.

43.    At the time the above misrepresentations and material omissions were made, Plaintiff was ignorant of their falsity and believed them to be true and did, in fact, rely on such fraudulent representations and omissions as evidenced by the fact that it placed its money in defendants' hands.   This reliance was reasonable because Defendant actively misrepresented, suppressed, concealed and failed to disclose the truth.

44.    As a direct and proximate result of Defendant's false, fraudulent or deceptive acts, Plaintiff has sustained damages in an amount according to proof, but in no event less than $1,971,973.24.

45.    Plaintiff is informed and believes, and on that basis alleges, that defendant's acts were undertaken with intent to defraud, were willful, wanton, malicious and oppressive, and

further alleges that these acts justify an award of exemplary and punitive damages in a sum appropriate to punish Defendant and deter future similar misconduct.

## SECOND CAUSE OF ACTION

### (Conversion/Civil Theft Against Ezri Namvar)

46.    Plaintiff hereby incorporates by reference each and every allegation of paragraphs 1 through 38, and 40 through 45, as though fully set forth herein.

47.    By means of false, fraudulent and/or deceptive acts, Defendant Ezri Namvar, without Plaintiff's knowledge or consent, exercised dominion and control over, misappropriated, converted or stole for his personal use and possession, the Exchange Proceeds, all of which belong to Plaintiff in an amount not less than $1,971,973.24.

48.    Plaintiff is informed and believes, and based thereon alleges, that, at all times relevant herein, defendant knowingly and willfully conspired with as yet unknown co-defendants, by cooperation, encouragement, ratification, or otherwise, to misappropriate, convert, or steal the Exchange Proceeds, as set forth herein,

49.    Defendant's interference with Plaintiff's right to possess the Exchange Proceeds has been substantial and has deprived Plaintiff of the entire value of the Exchange Proceeds.

50.    As a proximate result of Defendant's wrongful conduct, Plaintiff has sustained damages in an amount according to proof, but in no event less than $1,971,973.24.

51.    Plaintiff is informed and believes, and on that basis alleges, that defendant's acts were undertaken with intent to defraud, were willful, wanton, malicious and oppressive, and further alleges that these acts justify an award of exemplary and punitive damages in a sum appropriate to punish Defendant and deter future similar misconduct.

## THIRD CAUSE OF ACTION

### (Breach of Fiduciary Duty And Aiding And Abetting Breach of Fiduciary Duty Against Ezri Namvar)

52.    Plaintiff hereby incorporates by reference each and every allegation of paragraphs 1 through 38, 4 through 45, and 47 through 51, as though set forth fully herein.

RUSS, AUGUST & KABAT

53.    As the owner and chief executive officer of the Qualified Intermediary for Plaintiff, as that term is defined by United States Treasury Regulations § 1031.1031(k)-1(g)(4)(iii), defendant had a relationship of trust and confidence with Plaintiff. Defendant was obligated as a fiduciary to act with the highest duty of good faith and care, and was prohibited from placing his own interests ahead of the interests of Plaintiff.

54.    Plaintiff has performed all of its obligations, except to the extent any such obligations have been excused or discharged by defendant's statements or conduct.

55.    Defendant has breached his fiduciary obligations to Plaintiff by, among other things:

a.    Engaging in the misrepresentations or material omissions to Plaintiff which are set forth above;

b.    Misappropriating for his own purposes the Exchange Proceeds that were intended and supposed to be held in trust for Plaintiff in a "nationally insured bank or savings institution" for purposes of effectuating the Section 1031 exchange; and

c.    Actively concealing the fact that he had misappropriated, converted or stolen the Exchange Proceeds for his personal use and possession.

56.    As a direct and proximate consequence of defendant's wrongful conduct, Plaintiff has been damaged in an amount according to proof, but in no event less than $1,971,973.24.

57.    Plaintiff is informed and believes, and on that basis alleges, that defendant's acts were undertaken with intent to defraud, were willful, wanton, malicious and oppressive, and further alleges that these acts justify an award of exemplary and punitive damages in a sum appropriate to punish Defendant and deter future similar misconduct.

## FOURTH CAUSE OF ACTION

### (Breach of Contract Against Ezri Namvar)

58.    Plaintiff hereby incorporates by reference each and. every allegation of paragraphs 1 through 38, 40 through 45, 47 through 51, and 53 through 57, as though fully set forth herein.

RUSS, AUGUST & KABAT

59.    As of August 19, 2008, Plaintiff and Namco Exchange entered into the Agreement.    Although not a signatory to that Agreement, defendant Ezri Namvar was the beneficiary of that Agreement through his ownership and operation of Namco Exchange, which, as alleged above, is deemed to be an undercapitalized alter ego of defendant Ezri Namvar.

60.    Defendant has materially breached the Agreement by:

a.    Failing to maintain the Exchange Proceeds in a "nationally insured bank or savings institution" as required in paragraph 5 of the Agreement and, upon information and belief, instead using the proceeds for defendant's own personal investments or for the operation of an illegal Ponzi scheme;

b.    Failing and refusing to return to Plaintiff the balance of the Exchange Proceeds, despite Plaintiff's request for the same.

61.    As a direct and proximate result of each of the above-identified breaches, Plaintiff has sustained damages in an amount according to proof, but in no event less than $1,971,973.24.

## FIFTH CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing Against Ezri Namvar)

62.    Plaintiff hereby incorporates by reference each and every allegation of paragraphs 1 through 38, 40 through 45, 47 through 51, 53 through 57, and 59 through 61, as though fully set forth herein.

63.    As of August 19, 2008, Plaintiff and defendant entered into the Agreement, as set forth above.

64.    As with all agreements in the State of California, the Agreement contains an implied covenant of good faith and fair dealing, pursuant to which each of the parties thereto, including defendant Ezri Namvar, agreed not to take any action to deprive the other parties of the benefit of the Agreement.

65.    Plaintiff has performed all conditions, covenants and promises required under the Agreement, except those conditions, covenants and promises which have been prevented or otherwise excused by defendant's conduct.

2822-03-090128 BankrComplaintv2

15

**COMPLAINT**

RUSS, AUGUST & KABAT

1    66.    Notwithstanding Plaintiff's performance, defendant has materially breached the

2    covenant of good faith and fair dealing by;

3          a.    Engaging in the misrepresentations or material omissions to Plaintiff as set

4    forth herein;

5          b.    Engaging in the conduct or omissions set forth herein; and

6          c.    Committing the breaches set forth herein,

7    67.    As a direct and proximate result of each of the above-identified breaches and

8    wrongful acts, Plaintiff has sustained damages in an amount according to proof, but in no event

9    less than $1,971,973.24.

## SIXTH CAUSE OF ACTION

### (Unfair, Unlawful and Fraudulent Business Practice –

### Cal. Bus. & Prof. Code § 17200. *et seq.* - Against Ezri Namvar)

13    68.    Plaintiff hereby incorporate by reference each and every allegation of paragraphs

14    1 through 38, 40 through 45, 47 through 51, 53 through 57, 59 through 61, and 62 through 67, as

15    though set forth fully herein.

16    69.    Defendant's actions as complained of herein were undertaken in the course of

17    business activities, and constitute one or more unfair, unlawful or fraudulent business practices

18    under California Business and Professions Code Sections 17200, *et seq.*

19    70.    By reason of defendant's unfair, unlawful, or fraudulent business practices,

20    Plaintiff is entitled to full and immediate restitution of the balance of the Exchange Proceeds, as

21    well as its attorneys' fees and costs in bringing and litigating this action.

## SEVENTH CAUSE OF ACTION

### (Unjust Enrichment Against Ezri Namvar)

24    71.    Plaintiff incorporates by reference each and every allegation of paragraphs 1

25    through 38, 40 through 45, 47 through 51, 53 through 57, 59 through 61, 62 through 67, and 68

26    through 70, as though fully set forth herein.

27    72.    Plaintiff is informed and believes, and based thereon alleges, that, at all times

28    relevant herein, defendant Ezri Namvar knowingly and willfully conspired with other unknown

RUSS, AUGUST & KABAT

1   defendants, by cooperation, encouragement, ratification, or otherwise, to misappropriate, convert

2   or steal the Exchange Proceeds and defraud Plaintiff, as set forth herein.

3       73.     Through fraudulent, wrongful, and illegal acts, defendant has unjustly enriched

4   himself at the expense of Plaintiff.  Plaintiff is entitled to recover the benefit, in an amount

5   according to proof but in no event less than $1,971,973.24, unjustly appropriated by defendant as

6   described herein according to proof.

7                          **EIGHTH CAUSE OF ACTION**

8                **(Constructive Trust Against Defendant Ezri Namvar)**

9       74.     Plaintiff hereby incorporates by reference herein each and every allegation of

10  paragraphs 1 through 38, 40 through 45, 47 through 51, 53 through 57, 59 through 61, 62

11  through 67, 68 through 70,  and 72 through 73, as though set forth fully herein.

12      75.     Defendant has wrongfully acquired, and refused to return, the Exchange Proceeds.

13      76.     Through fraudulent and wrongful acts, defendant has unjustly enriched himself at

14  the expense of Plaintiff.

15      77.     Defendant has thereby become a constructive trustee, on behalf of Plaintiff, of the

16  Exchange Proceeds, and any other assets converted from Plaintiff.

17      78.     Plaintiff is informed and believes, and based thereon alleges, that certain of the

18  assets converted from Plaintiff may reside with as-yet unknown third parties.

19      79.     Plaintiff seeks a judicial declaration establishing that defendant shall hold the

20  Exchange Proceeds, and any other converted monies or other assets, in trust for Plaintiff.

21                           **NINTH CAUSE OF ACTION**

22               **(Accounting Against Defendant Ezri Namvar)**

23      80.     Plaintiff hereby incorporates by reference herein each and every allegation of

24  paragraphs 1 through 38, 40 through 45, 47 through 51, 53 through 57, 59 through 61, 62

25  through 67, 68 through 70,  72 through 73,  and 74 through 79, as though set forth fully herein.

26      81.     Under the Agreement, Plaintiff is entitled to the benefit of the full amount of the

27  Exchange Proceeds as well as interest earned on those proceeds.  In light of defendant's failure

28  to maintain the Exchange Proceeds in a "nationally insured bank or savings institution" as the

RUSS, AUGUST & KABAT

2822-03 090128 BankrComplaintv2                    17

**COMPLAINT**

1   Agreement provides, and defendant's failure to account for the amount of any interest or profits

2   earned on such proceeds, the precise amount of money owed by defendant to Plaintiff is

3   unknown to Plaintiff and cannot be ascertained without an accounting.

4       82.    Plaintiff hereby demands, and has demanded, that defendant account for the

5   aforementioned monies and pay the amount due to Plaintiff.

6       83.    Despite such demands, defendant has failed and refused, and continues to fail and

7   refuse, to render any accounting – much less pay – Plaintiff the entire amount of monies due and

8   owing.

9                           **TENTH CAUSE OF ACTION**

10   **(Declaratory Judgment and Injunctive Relief Against Defendant Ezri Namvar)**

11       84.    Plaintiff hereby incorporates by reference herein each and every allegation of

12   paragraphs 1 through 38, 40 through 45, 47 through 51, 53 through 57, 59 through 61, 62

13   through 67, 68 through 70,  72 through 73,  74 through 79, and 80 through 83, as though set forth

14   fully herein.

15       85.    By virtue of the foregoing matters, an actual controversy and dispute has arisen

16   between Plaintiff and defendant in that Plaintiff maintains that it has an absolute right to

17   recovery of its funds in the Section 1031 or Wells Fargo Account and defendant refuses to return

18   those funds.  Furthermore, Plaintiff is informed and believes, and based thereon alleges, that

19   defendant does not fully recognize the illegality or wrongfulness of their conduct in that

20   defendant has offered various non-workable alternatives to allegedly make Plaintiff whole, none

21   of which is viable and all of which may, of themselves, is or may be fraudulent.

22       86.    Plaintiff desires a judicial determination and declaration of the parties' respective

23   rights and duties under the Agreement (or otherwise) and specifically desires a determination

24   that defendant is obligated to return all funds, with interest and any other applicable damages to

25   Plaintiff.

26       87.    Such a declaration is necessary and appropriate at this time so that Plaintiff can

27   determine its rights under the Agreement.  Accordingly, Plaintiff requests that this Court

28

RUSS, AUGUST & KABAT

1 adjudicate the controversy, Agreement and issue a declaration of the rights, duties, and
2 obligations of the parties under the Agreement.

3    88.    It is on this basis that Plaintiff seeks injunctive relief, including a temporary
4 restraining order and an order to show cause regarding the imposition of a preliminary and
5 permanent injunction to prevent further imminent erosion of their financial position as a result of
6 defendant's ongoing Ponzi scheme.

7                              **PRAYER FOR RELIEF**

8    WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

9                    **A.    FIRST CAUSE OF ACTION**

10    1.    For compensatory damages in an amount not yet fully determined, but in no event
11 less than $1,971,973.24;

12    2.    For consequential damages, including but not limited to the loss of all Section
13 1031 tax advantages or real estate profits, in an amount to be proven at trial;

14    3.    For punitive and exemplary damages in an amount to be proven at trial;

15    4.    For Plaintiffs costs of suit incurred herein; and

16    5.    For such other and further relief as the Court may deem just and proper.

17                    **B.    SECOND CAUSE OF ACTION**

18    1.    For compensatory damages in an amount not yet fully determined, but in no event
19 less than $1,971,973.24;

20    2.    For consequential damages, including but not limited to the loss of all Section
21 1031 tax advantages or real estate profits, in an amount to be proven at trial;

22    3.    For punitive and exemplary damages in an amount to be proven at trial;

23    4.    For Plaintiffs costs of suit incurred herein; and

24    5.    For such other and further relief as the Court may deem just and proper.

25                    **C.    THIRD CAUSE OF ACTION**

26    1.    For compensatory damages in an amount not yet fully determined, but in no event
27 less than $1,971,973.24;

28

RUSS, AUGUST & KABAT

2822-03 090128 BankrComplaintv2

19

**COMPLAINT**

2.    For consequential damages, including but not limited to the loss of all Section 1031 tax advantages or real estate profits, in an amount to be proven at trial;

3.    For punitive and exemplary damages in an amount to be proven at trial;

4.    For Plaintiffs costs of suit incurred herein; and

5.    For such other and further relief as the Court may deem just and proper.

### D.    FOURTH CAUSE OF ACTION

1.    For compensatory damages in an amount not yet fully determined, but in no event less than $1,971,973.24;

2.    For consequential damages, including but not limited to the loss of all Section 1031 tax advantages 'or real estate profits, in an amount to be proven at trial;

3.    For Plaintiff's attorneys' fees, pursuant to Section 16 of the Agreement, and its costs of suit incurred herein; and

4.    For such other and further relief as the Court may deem just and proper.

### E.    FIFTH CAUSE OF ACTION

1.    For compensatory damages in an amount not yet fully determined, but in no event less than $1,971,973.24;

2.    For consequential damages, including but not limited to the loss of all Section 1031 tax advantages or real estate profits, in an amount to be proven at trial;

3.    For Plaintiffs attorneys' fees, pursuant to Section 16 of the Agreement, and its costs of suit incurred herein; and

4.    For such other and further relief as the Court may deem just and proper.

### F.    SIXTH CAUSE OF ACTION

1.    For restitution of an amount not yet fully determined, but in no event less than $1,971,973.24;

2.    For an order enjoining and restraining Defendant and all persons acting with, for or in concert with him from any further unlawful practices;

3.    For Plaintiff's attorneys' fees and costs of suit incurred herein;

4.    For Plaintiff's costs of suit incurred herein; and

RUSS, AUGUST & KABAT

2822-03 090128 BankrComplaintv2

20

**COMPLAINT**

RUSS, AUGUST & KABAT

5.    For such other and further relief as the Court may deem just and proper.

### G.   SEVENTH CAUSE OF ACTION

1.    For restitution of an amount not yet fully determined, but in no event less than $1,971,973.24;

2.    For an accounting;

3.    For imposition of a constructive trust;

4.    For disgorgement of all profits obtained by defendant as a result of the fraudulent acts complained of herein;

5.    For Plaintiff's costs of suit incurred herein; and

6.    For such other and further relief as the Court may deem just and proper.

### H.   EIGHTH CAUSE OF ACTION

1.    For restitution of an amount not yet fully determined, but in no event less than $1,971,973.24;

2.    For an accounting;

3.    For imposition of a constructive trust;

4.    For disgorgement of all profits obtained by Defendant as a result of the fraudulent acts complained of herein;

5.    For Plaintiff's costs of suit incurred herein; and

6.    For such other and further relief as the Court may deem just and proper.

### I.   NINTH CAUSE OF ACTION

1.    For restitution of an amount not yet fully determined, but in no event less than $1,971,973.24;

2.    For an accounting;

3.    For imposition of a constructive trust;

4.    For disgorgement of all profits obtained by Defendant as a result of the fraudulent acts complained of herein;

5.    For Plaintiffs costs of suit incurred herein; and

6.    For such other and further relief as the Court may deem just and proper.

RUSS, AUGUST & KABAT

## J.    TENTH CAUSE OF ACTION

1.    For restitution of an amount not yet fully determined, but in no event less than $1,971,973.24;

2.    A judicial determination that Plaintiff is entitled to recover all of their assets under the Agreement.

3.    Injunctive relief in the form of a Temporary Restraining Order, as well as an Order to Show Cause regarding the imposition of a preliminary and permanent injunction (and the subsequent imposition of such injunctions), based on a determination that Plaintiff has no plain, speedy and adequate remedy at law to compel defendants' to cease wrongful conduct and return the funds stolen.  Plaintiff is informed and believes that, unless restrained by this Court, defendant will continue such wrongful conduct, all to Plaintiff's irreparable injury.  Accordingly, Plaintiff seeks the above requested injunctive relief to prevent Defendant from further hiding, transferring or encumbering assets.

4.    For Plaintiffs costs of suit incurred herein; and

5.    For such other and further relief as the Court may deem just and proper.

DATED:  January 29, 2009               Respectfully submitted,

                                       **RUSS, AUGUST & KABAT**
                                       DAVID R. GABOR

By:    _____
                                       David R. Gabor, Esq.
                                       Attorneys for Plaintiff
                                       Sunnylane Partners, LLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED:  January 29, 2009

Respectfully submitted,

**RUSS, AUGUST & KABAT**
DAVID R. GABOR

By:  _____
David R. Gabor
Attorneys for Plaintiff
Sunnylane Partners, LLC

## EXCHANGE AGREEMENT

THIS EXCHANGE AGREEMENT (this "Agreement") is made and entered into as of **AUGUST 19, 2008**, by and between **SUNNYLANE PARTNERS, LLC**, an Oklahoma limited liability company (hereinafter referred to as "Exchanger"), and **NAMCO FINANCIAL EXCHANGE CORP.**, a California corporation (hereinafter "Intermediary").

This Agreement is made and entered into with reference to the following facts:

A. Exchanger is the present owner of certain rights in that certain real property located at and referred to by the street address of **7201 S. SUNNYLANE RD., OKLAHOMA CITY, OK** (hereinafter collectively referred to as the "Relinquished Property").

B. Exchanger desires to make a qualified tax deferred exchange of the Relinquished Property for other property or properties of like kind pursuant to and in accordance with Section 1031 of the Internal Revenue Code, and the Treasury regulations promulgated thereunder ("Treasury Regulations").

C. The Relinquished Property is the subject of that certain Purchase and Sale Agreement (the "Purchase Agreement"), dated **June 5, 2008**, by and between Exchanger, as seller, and **GRAND MESA, LLC**, a limited liability company, as buyer ("Buyer").

D. Intermediary is willing to act as a "qualified intermediary", as that term is defined in Treasury Regulations Sections 11031 (k)- 1 (g)(4), in connection with Exchanger's exchange.

NOW THEREFORE, in consideration of the mutual covenants, conditions, and agreements set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Exchanger and Intermediary hereby agree as follows:

## 1. EXCHANGE OF PROPERTIES.

1.1    Exchanger agrees to convey the Relinquished Property to Intermediary in consideration of, and in exchange for the conveyance by Intermediary to Exchanger of other property (or properties) of like kind to be identified by Exchanger and conveyed to Intermediary pursuant to Section 2 below. Such other property (or properties) is referred to in this Agreement as the "Replacement Property." Intermediary agrees to convey the Relinquished Property to Buyer and to acquire the Replacement Property from the seller or sellers thereof (the "Seller"), on the terms and conditions in this Agreement, in furtherance of the exchange described above.

1.2    Concurrently with the execution of this Agreement, Exchanger shall execute an Assignment Agreement ("Assignment"), which provides that Intermediary will succeed to all the contractual rights, and the contractual obligations of Exchanger to convey the Relinquished Property to Buyer, in connection with a tax-deferred exchange for

Sunnylane Partners, LLC – 1031 Exchange
Prop: 7201 S. Sunnyland Rd., Oklahoma City, OK.
First American Title & Trust Company; Escrow No. 1208296-OK11

**EXHIBIT**   1

Exchanger.

1.3   Intermediary shall convey or cause the conveyance of the Relinquished Property to Buyer pursuant to the terms of the Purchase Agreement. In order to facilitate the transfer of the Relinquished Property to Buyer, and to save additional transfer taxes and other costs, Exchanger shall convey and assign the Relinquished Property directly to Buyer on behalf of Intermediary.

## 2 EXCHANGER'S TIME REQUIREMENTS

2.1   Exchanger acknowledges that, for the exchange transaction to qualify for deferral of gain under Internal Revenue Code Section 1031, Exchanger must satisfy the following time requirements, which shall be the sole responsibility of Exchanger:

a.   Exchanger must identify the Replacement Property before the expiration of the Identification Period (defined below); and

b.   Exchanger must receive the identified Replacement Property before the expiration of the Exchange Period (defined below).

2.2   Within forty-five (45) days following the conveyance of the Relinquished Property from Exchanger to Intermediary (the "Identification Period"), Exchanger shall identify the Replacement Property.

2.3   The Replacement Property shall be deemed identified only if it is designated as replacement property in a written document signed by the taxpayer and hand delivered, mailed, telecopied, or otherwise sent before the end of the Identification Period to either:

a.   The person obligated to transfer the Replacement Property to Exchanger; or

b.   Any other person involved in the exchange other than the Exchanger or a disqualified person as defined in Treasury Regulations Sections 1.1031 (k)(2), (k)(3) or (k)(4).

Replacement Property is deemed identified before the end of the Identification Period only if the requirements of this section are satisfied with respect to the Replacement Property. However, any Replacement Property that is received by Exchanger before the end of the Identification Period will, in all events, be treated as identified before the end of the Identification Period.

2.4   The period within which the taxpayer must receive the replacement property (the "Exchange Period") begins on the date on which the Relinquished Property sale escrow closes and ends at midnight on ***the earlier of*** one hundred eighty (180) days after the date on which the Relinquished Property sale escrow closes ***or*** the due date for the taxpayer's tax return for the taxable year in which the transfer of the relinquished property occurs. If there are multiple Relinquished Properties then the Exchange Period will begin

Sunnylane Partners, LLC – 1031 Exchange
Prop: 7201 S. Sunnyland Rd., Oklahoma City, OK
First American Title & Trust Company; Escrow No. 1208296-OK11

on the date the first Relinquished Property escrow closes.

## 3. ACQUISITION OF REPLACEMENT PROPERTY

3.1   Exchanger shall establish with the Seller of the identified Replacement Property the terms of acquisition thereof and shall provide Intermediary with the form of acquisition agreement acceptable to Exchanger. Intermediary shall thereafter accept an assignment of Exchanger's contract rights to purchase the Replacement Property.

3.2   Intermediary shall acquire the Replacement Property through procedures specified in the relevant acquisition agreement. Concurrent with the acquisition of the Replacement Property, Intermediary shall cause the transfer and conveyance thereof to Exchanger. In order to facilitate the transfer of the Replacement Property to Exchanger, and to save additional transfer taxes and other costs, Intermediary shall be deemed to have satisfied its obligations hereunder if it causes the Seller of any Replacement Property to convey title thereof directly to Exchanger rather than Intermediary first acquiring title and thereafter conveying it to Exchanger.

3.3   In no event shall Intermediary be required to make a cash payment for the acquisition of the Replacement Property, including all costs and expenses of such acquisition or acquisitions, in excess of the Exchange Proceeds, as defined below, to the extent they have then been received in cash by Intermediary from the sale of the Relinquished Property. All costs of acquiring the Replacement Property, including payments toward the purchase price and all other acquisition fees incident thereto shall be borne first from the Exchange Proceeds held by Intermediary under this Agreement and then, to the extent necessary, from the funds of Exchanger. Further, Intermediary shall not be required to assume any secured loan on the Replacement Property to be acquired or to execute a promissory note or other evidence of indebtedness in connection with such acquisition or acquisitions which might impose any liability upon Intermediary for repayment of such obligation continuing after the date of closing with respect to the Replacement Property

## 4. TERMINATION OF EXCHANGE.

4.1   Except as expressly provided herein, Exchanger shall have no right to request or receive anything other than like kind real property for the period beginning on the date the Relinquished Property is transferred to Buyer and ending at midnight on the last day of the Exchange Period. Exchanger shall therefore have no right, except as provided in Section 4.2, to receive, pledge, borrow, or otherwise obtain the benefits of money (including, without limitation, any interest income earned on the proceeds held in trust by Intermediary under this Agreement, as described in Section 20 below) or other property held by Intermediary under this Agreement prior to the end of the Exchange Period.

Sunnylane Partners, LLC – 1031 Exchange
Prop: 7201 S. Sunnyland Rd., Oklahoma City, OK
First American Title & Trust Company; Escrow No. 1208296-OK11

4.2   Exchanger shall have the right to require Intermediary to distribute the balance of the Exchange Proceeds upon the conditions set forth as follows:

(i)    After the expiration of the Identification Period, if Exchanger has not identified Replacement Property (pursuant to Section 2) by the end of the Identification Period; _or_

(ii)   If Exchanger has identified Replacement Property (pursuant to Section 2) _and_ Exchanger has received all of the Replacement Property to which they are entitled to under this Agreement; _or_

(iii)  After the expiration of the Identification Period, if Exchanger has identified Replacement Property (pursuant to Section 2) _and_ there has occurred after the end of the Identification Period, a material and substantial contingency that (1) relates to the deferred exchange, (2) is provided for in writing, _and_ (3) is beyond the control of the Exchanger and of any disqualified person (as defined in Treasury Regulations 1.1031 (k)(2), (k)(3) or (k)(4)), other than the person obligated to transfer the Replacement Property to Exchanger.

Then Intermediary shall pay to Exchanger the amount equal to the balance of any unused Exchange Proceeds. In the event that Intermediary makes such cash payment to Exchanger at Intermediary's sole election as provided above, the Intermediary shall thereafter have no further obligation regarding the acquisition and conveyance of the Replacement Property. In the event Intermediary makes such cash payment to Exchanger, Exchanger agrees to receive such payment by company check of Intermediary. It is intended that the foregoing conditions be interpreted and imposed in a manner consistent with the limitations contained in Regulations Section 1.1031 (k)— 1 (g)(6).

4.3   Upon the expiration of the Exchange Period, Intermediary shall distribute to Exchanger a sum equal to any balance of the Exchange Proceeds that Intermediary has not already used to acquire Replacement Property for conveyance to Exchanger.

5.   EXCHANGE PROCEEDS. On or immediately after the close of escrow for the conveyance of the Relinquished Property, the Escrow Holder, as defined below, will deposit with Intermediary funds and/or negotiable paper "Exchange Proceeds" representing the net proceeds from the sale of the Relinquished Property from Intermediary to Buyer. Exchanger and Intermediary expressly agree that any cash proceeds received from the conveyance of the Relinquished Property will be deposited with other funds in a general account or accounts of the Intermediary with any nationally insured bank or savings institution, and may be transferred to any other such general account or accounts as directed by Intermediary. Exchanger shall receive all interest earned on the Exchange Proceeds on deposit with Intermediary subject to payment of the Administrative Fee required pursuant to paragraph 20 of this Agreement.

Page 4 of 9

Sunnylane Partners, LLC — 1031 Exchange
Prop: 7201 S. Sunnyland Rd., Oklahoma City, OK
First American Title & Trust Company; Escrow No. 1208296-OK11

6.  ESCROW. The escrow for the transfer of the Relinquished Property has been established with **FIRST AMERICAN TITLE & TRUST COMPANY**, located at 501 North Walker Suite 170, Oklahoma City, OK 73102; Escrow Number 1208296-OK ("Escrow Holder"). This Agreement shall be attached to any instructions prepared for such escrow and shall thereby be incorporated into and form a part of such instructions. The parties hereto, and each of them, covenant and agree to execute escrow instructions to the Escrow Holder consistent with the terms and provisions of this Agreement for the purpose of effecting transfer provided therein.

7.  CONFLICTING INSTRUCTIONS. Upon receipt of any conflicting instructions, Intermediary will no longer be obligated to take any action in connection with this transaction until further consistent instructions are received from the principals, and Intermediary is authorized to hold all moneys and/or instruments until otherwise directed, either by the principals' mutual written instructions or by final order of a court of competent jurisdiction. In the event of conflicting claims to any funds or other documents, Intermediary has the absolute right, at their election, to file an action interpleader requiring the principals to answer and litigate their several claims and rights amongst themselves.

8.  EXECUTION OF DOCUMENTS. All the parties agree to execute any and all additional documents and instruments necessary to carry out the terms of this Agreement.

9.  COUNTERPARTS. This Agreement may be executed in counterparts and shall be of the same force and effect as if one document had been signed by all parties.

10. CONFLICT WITH PRIOR AGREEMENTS. If and to the extent that this Agreement is in conflict with any prior written agreement or understanding between the parties hereto, the terms of this Agreement shall prevail. No modification or waiver of the terms of the Agreement shall be valid unless made in a writing and signed by both parties.

11. SURVIVAL. The terms of this Agreement shall survive the close of escrow and the delivery of the deed of the Relinquished Property to Intermediary or Buyer.

12. TIME. Time is of the essence of this Agreement.

13. BINDING. This Agreement shall inure to the benefit of, and shall be binding upon, the parties hereto, their estates, heirs, representatives, and assigns; provided, however, that neither Intermediary nor Exchanger shall have the right to assign, pledge, hypothecate, or transfer this Agreement or any of their respective rights hereunder without the prior written consent of the other, which may be withheld in the sole discretion of the party whose consent is sought.

14. NOTICES. Any notice to be given hereunder shall be given by personal delivery or by depositing such notice in the United States Mail first class postage prepaid, or personal delivery, and addressed to the respective party at the following address:

Sunnylane Partners, LLC – 1031 Exchange
Prop: 7201 S. Sunnyland Rd., Oklahoma City, OK
First American Title & Trust Company; Escrow No. 1208296-OK11

Exchanger

Sunnylane Partners, LLC

_____

_____

_____


Intermediary

Namco Financial Exchange Corp.
12121 Wilshire Boulevard, 1400
Los Angeles, CA 90025
Tel:   310-207-1000
Fax:   310-207-6308

15. NO AGENCY. Exchanger acknowledges that Intermediary is acting as a principal in all the transactions contemplated by this Agreement and in no way shall be deemed an agent of Exchanger. Intermediary shall not have any obligations to Exchanger as an agent of Exchanger nor shall Exchanger have any obligations to Intermediary as a principal of Intermediary.

16. ATTORNEYS FEES. Should suit be brought to enforce or interpret any part of this Agreement, the prevailing party shall be entitled to recover as an element of its costs and not as damages, reasonable attorneys fees to be fixed by the court.

17. INDEMNIFICATION AND ACKNOWLEDGMENTS. Exchanger shall and does hereby agree to hold Intermediary harmless and to indemnify Intermediary and its shareholders, officers, directors, employees, attorneys and representatives from any and all claims, expenses, losses, costs, taxes, and assessments of any nature or kind, and from any and all other claims whatsoever, expressed or implied, whether sounding in tort or in contract, that may be asserted against Intermediary now or in the future by any person (including, without limitation, Exchanger), firm, corporation, governmental agency or taxing authority that may arise out of or in connection with this Agreement, and/or any activity related to carrying out the terms of this Agreement, except only for any claim, expense, tax or assessment arising solely out of the gross negligence or willful misconduct of Intermediary. Exchanger has been advised and urged by Intermediary to obtain the advice and review of this Agreement and the entire transaction by an independent legal counsel and accountant regarding the legal and tax implications of the contemplated transaction, and all related documents and agreements, particularly those drafted, presented or produced by Intermediary. Exchanger has not relied, and will not rely, upon any statement or representations made by Intermediary.  Exchanger has represented and warranted to Intermediary that Exchanger has consulted with its own attorney with regard to the transaction described in this Agreement, and that the proposed exchange, involving the Relinquished Property, is a valid and conforming exchange transaction as contemplated by the provisions of Internal Revenue Code section 1031 and the related Treasury

Page 6 of 9

Sunnylane Partners, LLC – 1031 Exchange
Prop: 7201 S. Sunnyland Rd., Oklahoma City, OK
First American Title & Trust Company; Escrow No. 1208296-OK11

Regulations. The indemnity provided for herein shall include any and all liability, directly or indirectly caused by the use, analysis, storage, transportation, disposal, release, threatened release, discharge or generation of hazardous materials to, in, on, under, about, or from the Relinquished Property or any Replacement Property as part of this exchange. Exchanger's obligations shall include without limitation, and whether foreseeable or unforeseeable, all damages, claims or liabilities to any person or any property whatsoever, including all costs of any required or necessary repair, cleanup, detoxification or decontamination of any said property or any improvements, and the preparation and implementation of any closure, remedial action or other required plans in connection herewith.

18. NO WARRANTY REGARDING TAX CONSEQUENCES. INTERMEDIARY MAKES NO REPRESENTATIONS OR WARRANTY, NOR SHALL INTERMEDIARY BEAR ANY RESPONSIBILITY OR LIABILITY, CONCERNING THE FEDERAL OR STATE TAX CONSEQUENCES TO EXCHANGER OF THE TRANSACTION CONTEMPLATED HEREIN; INCLUDING, WITHOUT LIMITATION, THE STATUS OF ANY REPLACEMENT PROPERTY AS LIKE KIND PROPERTY OR THE QUALIFICATION OF THIS TRANSACTION AS A TAX-DEFERRED EXCHANGE PURSUANT TO SECTION 1031 OF THE INTERNAL REVENUE CODE OR APPLICABLE STATE TAX LAWS.

19. GOVERNING LAW. This Agreement shall be interpreted under and governed by the laws of the State of California.

20. FEE. Exchanger agrees to compensate Intermediary a set up fee in the amount of SEVEN HUNDRED FIFTY AND NO/100 DOLLARS ($750.00). The set up fee is non-refundable and shall be deducted from the proceeds received. This exchange fee is based on one relinquished property and one replacement property. If Exchanger is acquiring more than one replacement property, each additional replacement property shall costs an additional $200.00. This fee shall be deducted directly from your exchange account upon completion of the necessary documentation.

21. AFFILIATION. Exchanger is aware that shareholders, officers and/or directors of Intermediary are also shareholders and directors of Network Bank USA, and that Intermediary may deposit funds received or held by Intermediary in connection with the exchange transaction described in this Agreement in one or more accounts at Network Bank USA, and that Intermediary may receive interest or other benefits in connection with such deposits, all of which may be different from, and/or may exceed, interest which Exchanger may receive on funds with respect to which it is the beneficial owner under the exchange transaction. Exchanger waives, and at all times will waive, all rights and claims that it may now or hereafter have in connection with, related to or otherwise arising out of the matters described in the preceding sentence.

22. JOINT AND SEVERAL. The obligations and liabilities of the parties comprising Exchanger, if more than one, are and shall be the joint and several obligations of each of them.

Sunnylane Partners, LLC – 1031 Exchange
Prop: 7201 S. Sunnyland Rd., Oklahoma City, OK
First American Title & Trust Company; Escrow No. 1208296-OK11

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

EXCHANGER

SUNNYLANE PARTNERS, LLC
an Oklahoma limited liability company

By:  MSLR OKLAHOMA, LLC
     an Oklahoma limited liability company
     its managing member

By: _____
    Michael Schini
Its:  Managing Member

_10 - 0290373__
Social Security or Tax Identification Number

By: _____
    Larry Russ
Its:  Managing Member

_____
Social Security or Tax Identification Number

Page 1 of 9

Sunnylane Partners, LLC – 1031 Exchange
Prop: 7291 S. Sunnyland Rd., Oklahoma City, OK
First American Title & Trust Company, Escrow No. 1228296-OK31

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

**EXCHANGER**

**SUNNYLANE PARTNERS, LLC**
**an Oklahoma limited liability company**

By:   **MSLR OKLHOMA, LLC**
      **an Oklahoma limited liability company**
      **its managing member**


By:   _____
      Michael Schau
Its:  Managing Member


_____
Social Security or Tax Identification Number


By:   _____
      Larry Russ
Its:  Managing Member


_____
Social Security or Tax Identification Number

Page 8 of 9

Sunnylane Partners, LLC – 1031 Exchange
Prop: 7201 S. Sunnyland Rd., Oklahoma City, OK
First American Title & Trust Company; Escrow No. 1208296-OK11

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

**EXCHANGER**

**SUNNYLANE PARTNERS, LLC**
**an Oklahoma limited liability company**

By:    **MSLR OKLHOMA, LLC**
       **an Oklahoma limited liability company**
       **its managing member**


By:    _____
       Michael Schau
Its:   Managing Member


       _____
Social Security or Tax Identification Number


By:    _____
       Larry Russ
Its:   Managing Member


       _____
Social Security or Tax Identification Number


Page 8 of 9

Sunnylane Partners, LLC – 1031 Exchange
Prop: 7201 S. Sunnyland Rd., Oklahoma City, OK
First American Title & Trust Company; Escrow No. 1208296-OK11

## INTERMEDIARY

**NAMCO FINANCIAL EXCHANGE CORP.,**
**a California corporation**

By: _____

Hamid Taba

Its:    Controller

Sunnylane Partners, LLC – 1031 Exchange
Prop: 7201 S. Sunnyland Rd., Oklahoma City, OK
First American Title & Trust Company; Escrow No. 1208296-OK11

| Printed By: Rick August | Page: 1 | 12/18/08 5:08:09 PM |
| --- | --- | --- |

Subject: Fwd:
Date: Monday, September 1, 2008 12:07:25 PM
Sender: Rick August <raugust@raklaw.com>
From: Rick August <raugust@raklaw.com>
To: Larry Russ <lcruss@raklaw.com>

 Confirmation

-----Original Message-----
From: Sasha Ettehadieh
Sent: Friday, August 29, 2008 2:32 PM
To: Hamid Taba
Subject: FW:


-----Original Message-----
From: Keith.Berger@wellsfargo.com [mailto:Keith.Berger@wellsfargo.com]
Sent: Friday, August 29, 2008 2:31 PM
To: Sasha Ettehadieh
Subject:


8/29/2008 195 / INCOMING MONEY TRANSFER Credit Amount:
1,999,471.96
 Cust Ref: COMPLETE Bank Ref:

 Wires Ref: 0829QMGFT008004521

 Wells Ref: 080829095489

 122238611 SECURITY PACIFIC BANK ONTARIO, CA ORG=NAMCO FINANC

 IAL EXCHANGE CORP 12121 WILSHIRE BLVD LOS ANGELES, CA OBI=F/

 F/C/: ACCT 13041892 FOR NAMCO FINANCIAL EXCHANGE CORP CLIENT

 NAME: SUNNYLANE PARTNERS LLC 384.91 OPI=005004918 /FTR/ BNF

 =0000841096 WFBS CLEARING ACCOUNT NORTHSTAR EAST BLDG 5TH FL

 608 SECOND AVE, MINNEAPOLIS MN
 Completed Timestamp 080829151918 (Time Released)


INQACT          PHASE3 INQUIRY: ACCOUNT ACTIVITY          08/29
17:28

****

35                                    EXHIBIT    2

```
Printed By: Rick August                    Page: 2                    12/18/08 5:08:09 PM
```

130418921 NAMCO FINANCIAL EXCHANGE CORP          ZFDM DT _____ DIR B
TYPE _
CURR/FND USD  BEGIN BAL          TRADE BAL          SETTLE
BAL
                    1,999,471.96-
1,999,471.96-


S/E  TYP DESCRIPTION      QUANTITY      AMOUNT      E-DT
T-DT T-NBR
---- --- ------------- -------------------- -------------------- ----
---- -----
0829 CR  CASH JOURNAL                1,999,471.96-

          WT IN SECURITY


Keith Berger
Manager, Operations
Wells Fargo Institutional Brokerage & Sales
608 2nd Ave S, Suite 500
Minneapolis, MN 55407
P 612-667-9918
F 612-316-4701


E-mail is not a secure transmission medium and should not be used to
communicate confidential information.  If you elect to send or receive
information via e-mail, Wells Fargo cannot assure its security and will
not be liable if it is intercepted or viewed by another party.

*DG*

**WELLS FARGO**

Wells Fargo Brokerage Servi...   LLC
608 Second Avenue South
Minneapolis, Minnesota 55479

Customer Number:  13041892

Page  1

Sales Rep.:  ZFDM  DOUG MORELLO          (213)614-2244

LUPE C. DIAZ
ASSISTANT TO LARRY C. RUSS
RUSS, AUGUST & KABAT
12424 WILSHIRE BLVD,  SUITE 1200
LOS ANGELES, CA 90025

| Date | Description | Net Amount |
|---|---|---|
| 11/05/08 | TPD CK-FEES FILE #1208296-OK11 | 27,498.72 |

NOV 1 0 2008

| Check date 11/05/08 | Check number 00371236 | | TOTALS | 27,498.72 |
|---|---|---|---|---|

If you have any questions regarding these payments, please contact your WEBS Sales Representative.
Thank you for your business.

Detach here for your records

---

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK. HOLD AT AN ANGLE TO VIEW. DO NOT CASH IF NOT PRESENT.

**WELLS FARGO BROKERAGE SERVICES, LLC**
608 Second Avenue South
Minneapolis, Minnesota 55479

Date  11/05/08          00371236

75-46/919

Pay to
the order
of

LUPE C. DIAZ
ASSISTANT TO LARRY C. RUSS
RUSS, AUGUST & KABAT
12424 WILSHIRE BLVD,  SUITE 1200
LOS ANGELES, CA 90025

$  ********27,498.72

The sum of  ********27,498 dollars and 72 cents   Dollars

**WELLS FARGO**

Wells Fargo Bank, N.A.
4th and Plum
Red Wing, Minnesota 55066

*Anna Larson*

⑈003712361⑈ ⑈091900465⑈ 201271⑈

37          **EXHIBIT   3**

# Russ, August & Kabat

12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474

October 8, 2008

Sunnylane Property
Attn: Larry C Russ
12424 Wilshire Blvd
12th Floor
Los Angeles, CA 90025

Client ID   2822

Billing Attorney LCR

Bill Number          7264C

| Client ID   2822 | For services rendered through | | | September 30, 2008 | | |
| --- | --- | --- | --- | --- | --- | --- |
| Matter | Prev. Balance | Adjustments | Credits | Payments | Current Due | Total Due |
| 2822-001: General | $2,848.13 | $0.00 | $0.00 | $0.00 | $545.51 | $3,393.64 |
| 2822-002: Sunnylane Sale | $21,857.08 | $0.00 | $0.00 | $0.00 | $2,248.00 | $24,105.08 |
| | | | | Total Due All Combined Matters | | $27,498.72 |

| In re: | CHAPTER: 11 |
|---|---|
| Ezri Namvar                               Debtor(s). | CASE NUMBER: LA0832349ER |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

12424 Wilshire Boulevard, 12th Floor, Los Angeles, California 90025

A true and correct copy of the foregoing document described as <u>Summons and Complaint</u>  and Adversary <u>Proceeding Cover Sheet</u>_____ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below: Judge's Copy to: Judge Barry Russell, United States Bankruptcy Court, Edward Roybal Federal Building, 255 E. Temple Street, LA, CA 90012; Chamber's Copy to: United States Bankruptcy Court, Room 1668, Edward Roybal Federal Building, 255 E. Temple Street, LA, CA 90012

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>1/29/09 I caused to be</u> I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed. Judge's Copy to: Judge Barry Russell, United States Bankruptcy Court, Edward Roybal Federal Building, 255 E. Temple Street, LA, CA 90012; Chamber's Copy to: United States Bankruptcy Court, Room 1668, Edward Roybal Federal Building, 255 E. Temple Street, LA, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 1/29/09 | Stacy Hackney | _Signature_ |
|---|---|---|
| _Date_ | _Type Name_ | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**